DeJuan Brown,

      Petitioner,

– against –

Superintendent ANTHONY J. ANNUCCI,

      Respondent.

**MEMORANDUM & ORDER**

14-CV-4388 (ERK)

KORMAN, *J.*:

  On April 29, 2002, at approximately 8:00 p.m., Devon Ponds left a liquor store located at 616 Halsey Street in Brooklyn. Trial Tr. 125:1–7, 188:3, ECF No. 10. As Ponds exited, he saw an individual wearing a doo-rag and holding a large black gun. *Id.* at 147:3–4, 23. Ponds turned back toward the store, but was shot in the right arm. *Id.* at 149:14, 153:0. He then heard a second gunshot and saw a man, later identified as Darryl Jones, lying in front of the store. *Id.* at 152:3, 157:6–8. Jones died from a gunshot wound. *Id.* at 455:10–11.

  Joseph Funn, who had just left the liquor store, saw petitioner run from the store. *Id.* at 398:14. A nearby resident, Gary Jean heard the gunshots and then saw a man, matching petitioner's description, running. *Id.* at 460:1–6, 461:5. Jean observed the runner discarding a "metal object" as well as a doo-rag on Macon Street. *Id.* at 462:19, 463:20. Police later recovered a gun and doo-rag on Macon Street. *Id.* at 338:18–21. A ballistics report matched the discarded gun to the one used to shoot Ponds and Jones, *id.* at 380:13–24, and a lab analysis found petitioner's DNA on the doo-rag, *id.* at 104:15–19. At a subsequent lineup, Ponds identified petitioner as his shooter. *Id.* at 164:25–165:15, 116:10–116:17.

Petitioner was ultimately indicted and found guilty of first-degree manslaughter, first-degree assault, and second-degree criminal possession of a weapon. *Id.* at 636:25–637:14. On November 25, 2003, he was sentenced to consecutive sentences of imprisonment of twenty years for manslaughter and ten years for assault along with a concurrent five-year sentence for criminal possession. Sentencing Tr. 24:22–25:3, ECF No. 10–5. The Appellate Division affirmed his conviction on direct review. *See People v. Brown*, 84 A.D.3d 1263 (N.Y. App. Div. 2d Dep't 2011), *leave to appeal denied* 17 N.Y.3d 902 (2011). He then filed an application for a writ for error *coram nobis*, which was also denied. *See People v. Brown*, 109 A.D.3d 935 (N.Y. App. Div. 2d Dep't 2013), *leave to appeal denied* 23 N.Y.3d 1018 (2014). Finally, petitioner filed a motion vacate judgment under N.Y. Crim Proc. § 440.10, which was denied on March 28, 2014. Resp't's Ex. I, ECF 10–7, *leave to appeal denied* Resp't's Ex. J, ECF 10–7. Proceeding *pro se*, petitioner filed this petition for habeas corpus relief on July 21, 2014. Pet., ECF 1. Petitioner raises seven claims in his petition. I address each in turn.

## Discussion

### I. Confrontation Clause

Relying on, *Crawford v. Washington*, 541 U.S. 36 (2004), petitioner contends that testimony about the DNA evidence from the doo-rag given by Deborah Briones who supervised the DNA testing violated petitioner's Sixth Amendment right to confrontation. Briones, a criminalist in the Chief Medical Examiner's Office, testified as an expert regarding the DNA analysis from the recovered doo-rag. Trial Tr. 97:17–104:25. A criminalist is an individual who "perform[s] work in the chemical and/or physical analyses of evidentiary materials such as hair, fibers, body fluids, fingerprints, gunshot residue, fire accelerants, questioned documents, controlled substances, soil, metals, polymers, glass, and other types of forensic trace evidence

required in scientific criminal investigations." *NYPD Careers*, (Oct. 14, 2015), http://www.nyc.gov/html/nypd/html/careers/civilian_employment.shtml#criminalist. More specifically, a criminalist is "a person with a background in science, typically having at least a baccalaureate degree in an area such as chemistry, biology, forensic science, or criminalistics. Some criminalists have degrees in other, similarly related areas." California Association of Criminalists, *Criminalistics Information*, (Oct. 14, 2015), http://www.cacnews.org/membership/criminalistics.shtml. Briones' background matches this description. She holds a Bachelor's Degree in Biochemistry from Rutgers and has graduate credits in biochemistry, molecular genetics, and criminal justice. Trial Tr. 93:25–94:3. While she did not perform the DNA analysis of the doo-rag, she supervised the technician who analyzed it and she reviewed all relevant documents. *Id.* at 97:23–24.

Based on the DNA report, Briones testified that petitioner's DNA was on the doo-rag. *Id.* at 104:15–19. Petitioner insists that only the technician who performed the DNA analysis could have permissibly testified about the results. This argument was raised in his motion pursuant to N.Y. Crim Proc. § 440.10 to vacate the conviction. The petition was denied on the ground that petitioner had waived this claim by failing to raise it on direct appeal and that, in any event, the argument was without merit. *See* Resp't's Ex. I.

In rejecting petitioner's argument on the merits, the trial judge held that:

> In this case[,] a forensic scientist performed tests on some human hairs found on the doo-rag but found them insufficient for comparison and sent other hairs, along with the doo-rag for further testing to the OCME, (Office of the Chief Medical Examiner). At the Medical Examiner's office, Briones, a supervisor, was the person over-seeing the testing and reviewing all paper work of the analyst who performed the tests and generated the reports. Even if Briones was not familiar with the precise size and nature of the cells that were extracted for testing it is immaterial, since there was enough DNA collected from the doo-rag to reveal two contributors

> and the defendant was the major contributor. Whether the samples were blood, hair or skin cells does not change the outcome of the test.
>
> Briones was the supervisor overseeing each step of the DNA testing and personally reviewing the paperwork and reports. The jury had an opportunity to judge the weight of her testimony on direct and cross-examination. *Id.*

Passing over the procedural forfeiture issue, petitioner's claim does not warrant habeas corpus relief because he has failed to show that "as of the time of the relevant state court decision," there was "clearly established Federal law as determined by the Supreme Court of the United States" that supported his claim on the merits. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Specifically, during petitioner's appeal and post-conviction motions, the Supreme Court's jurisprudence on the Confrontation Clause was shifting. In 2004, the Supreme Court redefined the scope of "testimonial evidence" that triggers the Confrontation Clause. *See Crawford*, 541 U.S. at 60 (abrogating the standard for admissibility under *Roberts v. Ohio*, 448 U.S. 56 (1980)). Subsequently, it applied the *Crawford* rule in a series of cases that resulted in divided opinions with vigorous dissents. *See, e.g.*, *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2726 (2011) (Kennedy, J., dissenting) ("The persistent ambiguities in the Court's approach [to *Crawford*] are symptomatic of a rule not amenable to sensible applications.").

Petitioner relies primarily on *Bullcoming*, a post-*Crawford* decision, to support his Confrontation Clause claim. He asserts in his § 440.10 motion that "*Bullcoming* precisely mirrors the instant case." Resp't's Ex. G. In *Bullcoming*, the Supreme Court held that the Confrontation Clause bars the prosecution from introducing a laboratory report through the "in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification." *Id.* at 2710. Nevertheless, a majority of the Justices did not address the circumstances, such as those present in the instant case, where a supervisor, who observed an

analyst, testified about the results or a report about such results. Indeed, four Justices rejected the holding of the case and Justice Sotomayor, who provided the fifth vote, wrote a separate concurrence to emphasize what the Court was not holding. Specifically, she observed that "this is not a case in which the person testifying is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue." *Id.* at 2722 (Sotomayor, J., concurring). More significantly, she opined that "[i]t would be a different case if, for example, a supervisor who observed an analyst conducting a test testified about the results or a report about such results." *Id.* Thus, *Bullcoming* does not constitute create clearly established Supreme Court precedent. *See Marks v. United States*, 430 U.S 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'") (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976)). Instead, this issue raised by petitioner remains open.

Petitioner also appears to claim that appellate counsel provided ineffective assistance because he failed to appeal the admissibility of Briones's testimony. Passing over the standard, discussed below, necessary to succeed on such a claim, it is without merit. The failure of counsel to raise this issue on appeal would be consequential only if his claim was not addressed for this reason. The trial judge, however, addressed petitioner's claim on the merits in petitioner's § 440.10 motion and rejected it for the reasons discussed above. The holding was correct even without AEDPA deference.

## II. Ineffective Assistance of Appellate Counsel

Petitioner claims that appellate counsel should have argued that trial counsel was ineffective for not challenging a particular jury instruction that allegedly bolstered the credibility

5

of the prosecution's main eyewitness, Devon Ponds. Petitioner's trial counsel elicited testimony from Ponds on cross-examination that the police had showed him several different photos while he was hospitalized. Trial Tr. 222: 4–5. The trial judge stopped this line of questioning by trial counsel, *id.* at 222:5, because, even though the police had provided Ponds with a photo array, his photo-array identification of petitioner was inadmissible under New York criminal-procedure law, *id.* at 615:12–14. During deliberations, the jury asked the judge to read back Ponds' testimony about statements he had made to the police while in the hospital. *Id.* at 612:22–24. The trial judge did not read back the testimony, but instead told the jury that "Captain Ponds was shown several photographs by the police while he was still in the hospital." *Id.* at 618:12–13. This instruction sought to ensure that no juror would conclude that Ponds had identified petitioner from a photo array.

The success of an ineffective assistance of counsel claim is dependent on a showing that (1) "counsel's representation fell below an objective standard of reasonableness" and that (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *see also Smith v. Robbins*, 528 U.S. 259, 285 (2000) (holding that *Strickland* applies to ineffective assistance of appellate counsel claims). The first prong requires that courts recognize counsel's "wide latitude" in making tactical decisions and imposes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The second prong requires that a defendant "show[] that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id.* at 694. Petitioner's argument fails to overcome the first prong of *Strickland* because the Supreme Court has emphasized that the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the

6

hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). Moreover, petitioner's claim fails to overcome the second prong of *Strickland* because there is no reasonable probability that the instruction affected the outcome. Indeed, the evidence against petitioner was particularly strong, if not overwhelming. Significantly, petitioner raised his claim of ineffective assistance of appellate counsel in his *coram nobis* application that was rejected by the Appellate Division, in a holding that is entitled to double deference. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011).

### III. Ineffective Assistance of Trial Counsel

Petitioner alleges on three separate grounds that his trial counsel, who died in 2009, *see* John Eligon, *A Lawyer's Untimely Death Rattles Courthouse*, N.Y. Times, Nov. 3, 2009, provided ineffective assistance by failing to: (1) call certain fact witnesses, (2) call an expert witness to discredit eyewitness testimony, and (3) request a jury instruction on a lesser-included offense. These arguments were rejected when raised in petitioner's § 440.10 motion. Resp't's Ex. I. On habeas review, this holding is entitled to a "doubly deferential" standard of review. *See Cullen*, 131 S. Ct. at 1403.

#### a. Failure to Call Additional Fact Witnesses

Petitioner contends that trial counsel should have called three additional fact witnesses: Shameka Henderson, Wayne Seymour, and Vivian Hurdle. Pet. 12–14. Henderson stated in an interview with police that she had left the liquor store with Funn and then "heard two shots fired. [She] looked around . . . and didn[']t see anything. [She] didn[']t look back towards the liquor store because she didn[']t think nothing about it. [She] hear[d] shots fired all the time." Pet'r's Mot. to Vacate, Ex. A, Resp't's Ex. G. This claim was rejected in the trial judge's memorandum denying petitioner's § 440.10 motion. Specifically, the trial judge observed that "[d]efendant

7

maintains that Shameka Henderson's testimony would have been favorable, yet her statement to the police was that although she heard the gunshots, she 'looked around me and did not see anything.' Had she testified, there is nothing in her statement that would have been helpful to the defendant." (citation omitted). Resp't's Ex. I.

Under AEDPA's doubly deferential standard of review, *Pinholster*, 131 S. Ct. at 1403, petitioner has not met either prong of *Strickland*. "A failure to call a witness for tactical reasons of trial strategy does not satisfy the standard for ineffective assistance of counsel." *United States v. Eyman*, 313 F.3d 741, 743 (2d Cir. 2002). Petitioner's counsel could have reasonably determined that calling Henderson would not have aided petitioner's defense because she had not seen anything. Petitioner has also not shown prejudice for the same reasons: Henderson had nothing to say that would have helped petitioner.

The next witness whom petitioner claims trial counsel should have called is Wayne Seymour. In denying petitioner's § 440.10 motion, the trial judge observed that "[t]here is no affidavit from Wayne Seymour detailing what he is alleged to have seen that would aid defendant. The fact that Seymour may not have been able to identify the defendant does not prove that defendant was not the perpetrator." Resp't's Ex. I. Again under AEDPA's doubly deferential standard, the trial judge's resolution of this claim was not unreasonable. Similar to Henderson, Seymour had no relevant information because he could not identify the shooter. Thus, trial counsel reasonably could have concluded that there was no reason to call Henderson. Petitioner has also not shown prejudice for the reasons discussed in the paragraph above.

Finally, petitioner claims that trial counsel should have called his mother, Vivian Hurdle. Hurdle stated in an affidavit that she would have testified at trial that Joseph Funn "harbored a great deal of animosity towards my family, and particularly my son." Pet'r's Mot. to Vacate, Ex.

8

C, Resp't's Ex. G. This claim was also properly rejected for the reasons stated by the trial judge in denying petitioner's § 440.10 motion. I add these additional words. Instead of calling Hurdle to impeach Funn's credibility, defense counsel chose to impeach Funn through cross-examination. Defense counsel elicited on cross-examination that Funn had (1) been convicted of cocaine possession, Trial Tr. 401:20-21, (2) continued dealing drugs post-release, *id.* at 402:8–9, (3) been charged with menacing someone with a gun, *id.* at 405:8–13, (4) previously told counsel that he "didn't see anything," *id.* at 406:12–13, and (5) that police questioned him about the shooting of Ponds and Jones, *id.* at 407:3–18. Moreover, the prejudice prong of *Strickland* is also not satisfied here because, even if Hurdle would have discredited Funn's testimony, the prosecution presented additional compelling evidence of petitioner's guilt.

Finally, petitioner relies on a statement in an affidavit submitted by his mother, Vivian Hurdle, that, if called at trial, she would have testified that petitioner "was wearing a doo-rag when I accompanied him to the precinct," and that "[i]t is my firm conviction that the doo-rag he was wearing at the time was the one turned over [to] the laboratory technicians for DNA testing." Pet'r's Mot. to Vacate, Ex. C, Resp't's Ex. G. This claim of ineffective assistance of trial counsel also fails. Petitioner was not arrested until May 6, 2002, eight days after the commission of the crime. Petitioner's mother fails to explain the basis for her "firm conviction" that the doo-rag he was wearing at the time of his arrest was the doo-rag that was tested. Moreover, the "trial court found no serious issue with the chain of custody, and the People laid a foundation for the evidence and presented the witnesses who handled the evidence to testify and be cross-examined." Resp't's Ex. I. Under these circumstances, there is no basis for concluding that trial counsel was ineffective for failing to call petitioner's mother or that, if she had been called, that there was a reasonable probability that her testimony would have affected the outcome.

### b. Failure to Find Expert Witness

Next, petitioner alleges that trial counsel provided ineffective assistance because counsel neglected to find an expert on eyewitness testimony to discredit Ponds's testimony. Pet. 11. His claim fails for several reasons. First, trial counsel effectively questioned Ponds on his eyesight, Trial Tr. 188:2–3, his memory of events leading up to the shooting, *id.* at 188:7–204:22, and his ability to identify the shooter, *id.* at 214:21–24. Second, petitioner did not have a right to call an expert witness as a matter of state law. While the Court of Appeals has held that the trial court has discretion in deciding whether to admit expert testimony on this issue, *People v. Young*, 7 N.Y.3d 40, 44–45 (2006), a trial judge does not abuse his discretion by excluding such testimony when "corroboration was strong enough for the trial court reasonably to conclude that the expert's testimony would be of minor importance." *Id.* at 45; *see also People v. LeGrand*, 8 N.Y.3d 449, 459 (2007), a case upon which petitioner mistakenly relies, Pet. 15–16. The corroboration of the eyewitness identification in this case was clearly strong enough to justify the denial of an application to call an expert witness if such an application had even been made. Specifically, the eyewitness identification was corroborated by the DNA evidence and the ballistics report. Under these circumstances, it is at best uncertain that petitioner would have been permitted to call an expert or that there is a reasonable probability that his testimony would have affected the result in light of the corroborating evidence. Indeed, the judge who presided at trial was the same one who rejected this claim in denying petitioner's § 440.10 motion and who observed that "[i]n this case there was little need to call an expert on eyewitness testimony since there was more than one

witness who testified as well as other physical evidence linking defendant to the crime." Resp't's Ex. I.

### c. Failure to Request a Jury Instruction on a Lesser-included Offense

Petitioner's final ineffective assistance of trial counsel claim is that counsel failed to request a jury instruction on the lesser-included offense of second-degree manslaughter. Pet. 12. A defendant commits first-degree manslaughter when "[w]ith intent to cause serious physical injury to another person, he causes the death of such person." N.Y. Penal Law § 125.20(1). Second-degree manslaughter requires that the defendant "recklessly cause[] the death of another person." N.Y. Penal Law § 125.15(1). Because the jury asked the trial judge for a further explanation of "intent," petitioner claims that "[i]t is abundantly clear . . . that jurors would have pounced on the opportunity to convict defendant of second degree manslaughter had counsel implored the court to submit that charge." Pet. 12. In reviewing an attorney's performance, "courts afford 'substantial deference' to an attorney's 'tactical decision' to not request that the jury be instructed on a lesser included offense." *Swaby v. People*, No. 06–CV–3845 (ENV), 2014 WL 1347204, at *8 (E.D.N.Y.) (citations omitted). Moreover, when attorneys have pursued "an exculpatory defense, courts have declined to find ineffective assistance of counsel, recognizing that '[t]he tactical decision to pursue a complete, exculpatory defense rather than a partial one enjoys substantial deference.'" *Id.* (citation omitted).

In the instant case, petitioner's trial counsel died in 2009 and cannot now explain his decision not to pursue a lesser-included charge. At trial, however, he employed an exculpatory defense in arguing that neither eyewitness testimony nor the DNA results from the doo-rag identified petitioner as the shooter. As the trial judge observed in denying petitioner's § 440.10

motion, "defense counsel may have had a tactical reason for not requesting the charge, since the argument that the defendant acted recklessly but unintentionally, conflicted with the defendant's theory of misidentification."  Resp't's Ex. I.  In any event, it was not unreasonable for the trial judge to have found that counsel's performance was not ineffective.

Under these circumstances, it is unnecessary to address extensively whether petitioner would have been entitled to a lesser-included charge on second-degree manslaughter if a request had been made.  I agree with the District Attorney that petitioner was not entitled to a charge on this offense.  *See* Resp't's Opp'n to Pet. Write Habeas Corpus, 29–31, ECF No. 10.  I add these additional words.  Petitioner cites to several cases in his recently filed affidavit, Aff. in Resp. to Resp't's Opp'n Pet. Writ Habeas Corpus, ECF No. 16, in support of his claim that under New York law, a reasonable view of the evidence would support a finding of recklessness in petitioner's case.  Passing over the fact that these cases are distinguishable, they were both decided three years after he was tried and convicted.  *See People v. Atkinson*, 7 N.Y.3d 765 (2006); *People v. Dingle*, 30 A.D.3d 1121 (App Div. 1st Dep't 2006).  Under these circumstances, even if they now supported petitioner's argument, it could hardly be said that trial counsel was ineffective in not anticipating appellate court holdings that were decided three years after trial.  *See, e.g.*, *Sellan v. Kulhman*, 261 F.3d 303, 317 (2d Cir. 2001) ("[I]t was reasonable for the *coram nobis* court not to have expected appellate counsel to predict changes in state law.").

## IV.  Conviction Against the Weight of the Evidence

Petitioner claims that his convictions for manslaughter and assault were against the weight of the evidence.  The Appellate Division rejected this argument on direct appeal based on an independent review of the record.  *Brown*, 84 A.D.3d at 1263.  This claim is not subject to habeas review because the weight of the evidence standard is grounded exclusively in state law.  *See* N.Y.

12

Crim Proc. Law § 470.15(5); *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001). Nevertheless, for the first time in his response papers, petitioner challenges his conviction based on legal insufficiency. This claim is cognizable. Aff. in Resp. to Resp't's Opp'n Pet. Writ Habeas Corpus 30. Evidence is legally sufficient if a rational jury, viewing the evidence in the light most favorable to the People, could find beyond a reasonable doubt that the defendant committed all the essential elements of the crime. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Moreover, as I explained in *Perkins v. Comm'r of Corr. Serv.'s*, No. 04–CV–2307 (ERK), 2005 WL 3591722, at *1 (E.D.N.Y. 2005), "the conclusion that the verdict was not contrary to the weight of the evidence necessarily resolves the issue whether the evidence was legally sufficient to sustain the conviction." As the Court of Appeals has stated:

> *A guilty verdict based on a legally sufficient case is not the end of our inquiry but the beginning of our weight of the evidence review.* Indeed . . . "[w]e are obliged to weigh the evidence and form a conclusion as to the facts. It is not sufficient, as in most of the cases with us, to find evidence which presents a question of fact; it is necessary to go further before we affirm a conviction and find that the evidence is of such weight and credibility as to convince us that the jury was justified in finding the defendant guilty beyond a reasonable doubt." *People v. Cahill*, 2 N.Y.3d 14, 58 (2003) (internal citations omitted) (emphasis supplied).

Thus, the Appellate Division's holding that the verdict was not contrary to the weight of the evidence necessarily constitutes a rejection of the argument that the evidence was legally insufficient.

On habeas review, a "federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable." *Cavazos v. Smiths*, 132 S. Ct. 2, 4 (2011) (internal quotations omitted). Petitioner faces a high hurdle to succeed on this claim when "the deference to the state court decisions

required by § 2254(d) is applied to the state court's already deferential review" of the evidence. *Id.* at 6. My review of the record indicates that petitioner simply failed to overcome this hurdle even without any AEDPA deference, much less the double deference suggested by *Cavazos*.

## V. Improper Vouching

Petitioner claims that the prosecutor made improper "vouching" comments during his summation. Because the Appellate Division rejected this argument on direct appeal, *Brown*, 84 A.D.3d at 1264, it is subject to AEDPA deference. Moreover, because of the generality of the due process standard applicable here, it is even more difficult for petitioner to establish that the state court holding was unreasonable. *See Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). Thus, for petitioner to succeed on this claim, the "[p]rosecutors' comments [must have] 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In analyzing such a claim, a court must consider "how prejudicial the prosecutor's conduct was, what measures, if any, the trial court used to cure the prejudice, and whether conviction was certain absent the prejudicial conduct." *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991). Moreover, "[a] prosecutor has broad latitude during summation, particularly when responding to defense counsel's summation." *Walker v. Cunningham*, No. 08–CV–2735 (JG), 2008 WL 4737664, at *5 (E.D.N.Y. 2008); *see Darden*, 477 U.S. at 182 ("[T]he idea of 'invited response' is used not to excuse improper comments, but to determine their effect on the trial as a whole.") (citation omitted).

These considerations weigh against petitioner. Petitioner argues that the prosecutor improperly vouched for the credibility of Funn. Pet. 8. The prosecutor stated during his summation that Funn had no reason to lie and that if Funn was lying, "he [was] doing a horrible

14

job." Trial Tr. 554:12–15. This statement was a fair comment on the testimony of a key witness. Later, the prosecutor noted that "that there [were] reasons not to believe [Funn]," *id.* at 553:5–6, which would have mitigated any alleged vouching. But, even if the prosecutor had acted improperly, defense counsel had opened the door to the prosecutor's comments by telling the jury that Funn had lied and said "anything to convince you that he wasn't involved." *Id.* at 520:20–21.

Also without merit is petitioner's claim that the prosecutor improperly vouched for the DNA results, Pet. 9, by calling DNA evidence "the most powerful evidence in the world." *Id.* at 562:12–13. Passing over whether the summation was improper, the prosecutor was responding to defense counsel's summation, which sought to cast doubt on the DNA results. *Id.* at 528:2–24. Even absent the prosecutor's comment, a conviction was certain because of Ponds' and Jean's testimony and the ballistics report.

## VI. *Sandstrom* Instruction

Petitioner next alleges that the trial judge delivered an impermissible *Sandstrom* instruction in responding to the jury's request for guidance on the *mens rea* of "intent." This claim is procedurally barred because the Appellate Division held the claim to be unpreserved on direct review. *See Brown*, 84 A.D.3d at 1263; *see also Wainwright v. Sykes*, 433 U.S. 72, 87 (1977) (refusing to review an alleged *Miranda* violation on habeas review because defendant's "failure to timely object to its admission [at trial] amounted to an independent and adequate state procedural ground which would have prevented direct review").

Nevertheless, the claim fails on the merits. In *Sandstrom v. Montana*, 442 U.S. 510 (1979), the trial judge had instructed the jury that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts," *id.* at 513. The Supreme Court ruled this mandatory presumption constitutionally defective because "a reasonable juror could have given the

presumption conclusive or persuasion-shifting effect." *Id.* at 519. The Court, however, has upheld permissive-inference instructions because they "place[] no burden of any kind on the defendant." *Cty. Court of Ulster Cty., N.Y. v. Allen*, 442 U.S. 140, 157 (1979). Such an instruction violates due process only if "there is no rational way the trier could make the connection permitted by the inference." *Id.*

Here, the trial judge delivered a permissive-inference instruction that did not shift the State's burden of persuasion. The jury asked during deliberations "[h]ow do we intelligently decide what was intended?" Trial Tr. 629:13–14. The judge re-charged the jury that "intent *can* be inferred from the proven facts" and that jurors "*may* consider the person's conduct and all of the circumstances surrounding that conduct including, but not limited to . . . [whether] the result [was] the natural, necessary, and probable consequence of that conduct." *Id.* at 633:8–15 (emphasis added). Unlike the instruction in *Sandstrom*, no reasonable juror would have interpreted this instruction to mean that the law presumed that the defendant intended the natural consequences of his actions. Instead, the instruction indicated that the jurors could consider a variety of factors in assessing petitioner's *mens rea*.

## VII. Newly Discovered Evidence

Petitioner argues that a March 2010 affidavit from Joseph Funn, sworn to seven years after petitioner's conviction, which recants his in-court testimony, suffices as new evidence that establishes petitioner's innocence. Pet. 14. In the affidavit, Funn states that he testified falsely at trial because a police officer threatened him and that he "never observed [petitioner] with a gun and [he] never saw [petitioner] fleeing down Malcolm X Boulevard." Pet'r's Mot. to Vacate, Ex. D, Resp't's Ex. G. Funn attests that he saw petitioner only when Funn "first entered the liquor

16

store." *Id.* Petitioner argues that without Funn's testimony, no rational jury would have convicted him. Pet. 15.

The trial judge persuasively rejected this argument in denying his § 440.10 motion. Specifically, after discussing the basis for petitioner's argument, the trial judge concluded that:

> Newly discovered evidence must be "of such character as to create a probability that had such evidence been received at trial the verdict would probably have been more favorable to the defendant" (C.P.L. § 440.10(1)(g)). Since Funn's testimony was not the only evidence placing the defendant at the scene and since there is other testimony and physical evidence linking defendant to the crime, it is not likely that the outcome would be different. Resp't's Ex. I.

Because this involves a pure state-law claim, I see no need to discuss this issue extensively, although I agree with the trial judge that the Funn Affidavit failed to satisfy the standard for a trial based on newly discovered evidence.

## CONCLUSION

The petition is denied. I also deny a certificate of appealability.

**SO ORDERED.**

Brooklyn, New York
October 19, 2015

*Edward R. Korman*
Edward R. Korman
Senior United States District Judge